IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

KENNETH JAMES VALDEZ and
CHERYL ANN VALDEZ; PATRICK
GRIEBEL; DAMON SEAN TOAL-
ROSSI; DAVID JAYE TSOSIE, on
behalf of themselves and other similarly
situated,

    Plaintiffs,

                              CLASS ACTION COMPLAINT

                              JURY DEMANDED

v.                            No. 1:15-CV-00900

VOLKSWAGEN GROUP OF
AMERICA, INC., a foreign corporation,

    Defendant.

       Plaintiffs, Kenneth James Valdez and Cheryl Ann Valdez, Patrick Griebel, Damon Seal Toal-Rossi, and David Jaye Tsosie, for themselves and on behalf of all other similarly situated (the "Class"), by and through their counsel, allege the following for their Complaint:

## NATURE OF THE ACTION AND FACTUAL BACKGROUND

       1.     The Clean Air Act ("CAA") is federal legislation designed, in part, to "protect and enhance the quality of the Nation's air resources so as to promote public health and welfare…". 42 U.S.C. § 7401(b)(1). Congress, in enacting the CAA, found, in part, that "the increasing use of motor vehicles…has resulted in mounting dangers to the public health and welfare." 42 U.S.C. § 7401(a)(2). One of the aims of the CAA and its regulations is to protect human health and the environment by reducing emissions of nitrogen oxides (NOx) and other pollutants from motor vehicles because NOx plays a major role in air pollution. Accordingly, the Environmental Protection Agency ("EPA") set emission standards and test procedures for all

1

light-duty vehicles that had to be met prior to being sold in the United States. Any automobile manufacturer introducing for sale or offering for sale or importing any motor vehicle into the United States must comply with the CAA and its implementing regulations.

2. To meet federal law and regulations, automobile manufactures and importers must apply for a certificate of conformity from the EPA for any vehicle they seek to introduce into the United States commerce. The vehicles are then tested to ensure they meet the EPA's emission standards. As a part of the application to obtain a certificate of conformity, the automobile manufacturer and importer must identify all auxiliary emission control devices ("AECD") installed on the vehicles. The AECD is a device designed to operate a part of the emission control system on the vehicle. The software that operates an AECD can, however, be manipulated in a manner which performs differently based on when the vehicle is being tested to obtain a certificate of conformity as opposed to real world conditions. This is known as a "defeat device." Federal regulations define a defeat device as an AECD "that reduces the effectiveness of the emission control system under conditions which may reasonably be expected to be encountered in normal vehicle operation and use, unless: (1) Such conditions are substantially included in the Federal emission test procedures; (2) the need for the AECD is justified in terms of protecting the vehicle against damage or accident; (3) The AECD does not go beyond the requirements of engine starting; or (4) The AECD applies only for emergency vehicles…". 40 C.F.R. § 86.1803-01. A vehicle equipped with a defeat device cannot obtain a certificate of conformity and, therefore, cannot be sold in the United States.

3. Defendant Volkswagen Group of America, Inc. ("Volkswagen Group" or "Volkswagen") however, chose not to follow the CAA and its regulations. Instead, Volkswagen chose to engage in a complex, fraudulent scheme to deliberately circumvent the CAA and its

regulations through a defeat device that was not identified in its applications for certificate of conformity for certain 2.0-liter diesel vehicles it sold in the United States from 2009-2015 according to the EPA.

4. On September 18, 2015, the EPA issued a Notice of Violation ("NOV") to Defendant Volkswagen. The NOV described just how Volkswagen accomplished this unlawful scheme from 2009 – 2015. The NOV, incorporated herein by reference and attached as Exhibit 1 to this pleading, explained that Defendant Volkswagen "manufactured and installed defeat devices in certain model year 2009 through 2015 diesel light duty vehicles equipped with 2.0 liter engines." "These defeat devices bypass, defeat, or render inoperative elements of the vehicles' emission control system that exist to comply with CAA emission standards." According to the EPA, Volkswagen Group of America, Inc. "manufactured and installed software in the electronic control module (ECM) of [the vehicles identified in the NOV table] that sensed when the vehicle was being tested for compliance with EPA emission standards." The defeat device allowed Volkswagen 2.0-liter diesel engines to meet EPA regulations while being tested, but "switch" to perform differently under real world conditions. The result was a vehicle that actually increased NOx emissions by "a factor of 10 to 40 times above EPA compliant levels, depending on the type of drive cycle (e.g. city, highway)."

5. The EPA identified the following vehicles that contained the defeat device (hereinafter, these vehicles are known as the "Affected Vehicles"):

| Model Year | Make and Model(s) |
|---|---|
| 2009 | VW Jetta, VW Jetta Sportswagen |
| 2010 | VW Golf, VW Jetta, VW Jetta Sportswagen, Audi A3 |
| 2011 | VW Golf, VW Jetta, VW Jetta Sportswagen, Audi A3 |

| | |
|---|---|
| 2012 | VW Beetle, VW Beetle Convertible, VW Golf, VW Jetta, VW Jetta Sportswagen, VW Passat, Audi A3 |
| 2013 | VW Beetle, VW Beetle Convertible, VW Golf, VW Jetta, VW Jetta Sportswagen, VW Passat, Audi A3 |
| 2014 | VW Beetle, VW Beetle Convertible, VW Golf, VW Jetta, VW Jetta Sportswagen, VW Passat, Audi A3 |
| 2015 | VW Beetle, VW Beetle Convertible, VW Golf, VW Gold Sportswagen, VW Jetta, VW Passat, Audi A3 |

6. Defendant Volkswagen advertised these vehicles in New Mexico as "Clean Diesel." In one advertisement, Volkswagen told the public that the 2010 Golf TDI Clean Diesel was clean, efficient, and powerful:



**Burn rubber, not money.**

The all-new 2010 Golf TDI Clean Diesel offers fuel efficiency,* power, and performance. Or, in other words, it's a lean, mean, cleaner-burning machine. The Volkswagen TDI engine is cleaner than conventional diesels, emitting as much as 95% fewer sooty emissions than previous diesel engines, as well as a reduction in oxides of nitrogen and sulfur. It's powerful, with the kind of street-savvy torque that brings a smile to every stoplight. It's efficient, using a turbocharger and smart exhaust design to use fuel more effectively. So much so, in fact, that Volkswagen was the first automaker to make clean diesel cars that are certified in all 50 states. And best of all, it will help save you money, with an out-of-this-world EPA-estimated mileage of 30 city/42 highway mpg (automatic)* and over 594 miles on a single tank of fuel.**

If efficiency and savings weren't enough, the Golf TDI model also gives you premium features like the multi-function leather steering wheel, the touchscreen Premium VIII radio with a Media Device Interface (MDI) and iPod® cable, SIRIUS® Satellite Radio, a 6-speed manual transmission, fog lights, and the optional navigation package with touchscreen navigation to efficiently find your way to the bank.

"Good, clean fun" takes on a whole new meaning.

7. On information and belief, Defendant Volkswagen charged a premium for the Affected Vehicles because the vehicles were clean, powerful, and, in part, because the vehicles did not require urea a/k/a diesel exhaust fluid or AdBlue which was required by other diesel vehicles to meet federal law and regulations.

8. In 2013, the International Council on Clean Transportation along with West Virginia University (ICCT Testing) carried out independent testing of two Volkswagen models, the 2012 VW Jetta and 2013 VW Passat under laboratory and road conditions. The independent study found large discrepancies between the amount of emissions the vehicles were admitting when tested in the laboratory versus testing carried out in highway driving between California and Washington State. Under road conditions testing, the Volkswagen Jetta was found to emit nitrous oxide in amounts that exceeded limitations set by the Environmental Protection Agency. Under road conditions testing, the Volkswagen Passat was also found to emit nitrous oxide in amounts that exceeded limitations set by the Environmental Protection Agency.

9. ICCT testing also revealed that differences in emissions between laboratory testing and road condition testing was the result of software designed by VW Defendants and installed in certain model vehicles.

10. In 2014, the Volkswagen recalled some of the Affected Vehicles in an effort to have those vehicles comply with federal law through a repair. Defendant Volkswagen was unable to make the Affected Vehicles comply with the emissions standards without affecting the marketed performance characteristics. Accordingly, the Class members are damaged despite efforts by Volkswagen to remedy the issues created by their deliberate violation of federal law.

11. On or around September 3, 2015, Volkswagen publically admitted that it had programed certain models to behave differently when undergoing emission testing.

12. On or around September 22, 2015, VW Defendants publically admitted that scheme was much more widespread and may affect up to 11 million cars worldwide.

13. This claim arises because Kenneth James Valdez and Cheryl Ann Valdez, Patrick Griebel, Damon Seal Toal-Rossi, and David Jaye Tsosie ("Plaintiffs") claim that Defendant Volkswagen Group purposefully and intentionally breached the laws of the United States and the rules and regulations of the EPA by selling, leasing, and distributing the vehicles manufactured by its affiliates Volkswagen AG and Audi AG with the defeat device installed for the purpose of evading federal law. The unfair, deceptive, and/or fraudulent business practices of Defendant Volkswagen in installing a defeat device in the Affected Vehicles damaged the proposed Class members because the Class members would have not purchased or leased the Affected Vehicles or they would have paid less for the Affected Vehicles. Further, the current owners of such vehicles will see a diminution in the value of the Affected Vehicles resulting in a loss of money if the vehicles are to be sold. Even if the Affected Vehicles are brought into EPA compliance, that compliance will result in a loss of performance for the Affected Vehicles resulting in damage to the owners and lessors of the Affected Vehicles in the diminution of value of the Affected Vehicles.

14. This lawsuit seeks to establish a class of owners, former owners, lessors and former lessors of the Affected Vehicles in New Mexico. Discovery may reveal additional vehicles that were part of Defendant Volkswagen Group's scheme. Plaintiffs bring this action individually and on behalf of all other similarly situated current and former owners or lessees of the Affected Vehicles who reside in New Mexico. Plaintiffs seek damages and equitable relief for the conduct of Volkswagen related to the defeat device.

## PARTIES, VENUE, AND JURISDICTION

15. Plaintiffs Kenneth James Valdez and Cheryl Ann Valdez (collectively, "Valdezes") are residents and citizens of Cibola County, New Mexico. In December, 2014, the Valdezes purchased a new 2014 Volkswagen Passat SEL (TDI) from University Volkswagen in Albuquerque, New Mexico. The Valdezes 2014 Volkswagen Passat is an Affected Vehicle. Unknown to the Valdezes at the time, the 2014 Volkswagen Passat was equipped with a defeat device. The defeat device permitted the vehicle to get an EPA certification, but during normal driving conditions, the vehicle emitted up to 40 times the allowed level of pollutants.

16. The Valdezes purchased the 2014 Passat specifically because of the fuel mileage, the stated available power, and because it was marketed as "clean" diesel. One of the reasons Kenneth Valdez purchased the vehicle was because it did not require urea a/k/a diesel exhaust fluid or AdBlue. The Valdezes paid $39,844.28 for the 2014 Passat. At no time prior to the purchase of an Affected Vehicle did Defendant Volkswagen disclose that the 2014 Passat actually emitted up to 40 times the permitted levels of pollution or that it failed to meet federal law or regulations. Had the Valdezes known the truth, the Valdezes would not have purchased the vehicle or only purchased it at a reduced price.

17. Plaintiff Patrick Griebel is a resident and citizen of Bernalillo County, New Mexico. In October, 2012, Griebel purchased a 2013 Volkswagen Jetta Sportswagen (TDI) from University Volkswagen, Inc. in Albuquerque, New Mexico. Griebel's 2013 Volkswagen Jetta Sportswagen is an Affected Vehicle. Unknown to Griebel at the time, the 2013 Jetta Sportswagen was equipped with a defeat device. The defeat device permitted the vehicle to get an EPA certification, but during normal driving conditions, the vehicle emitted up to 40 times the allowed level of pollutants. In August, 2014, Griebel sold his 2013 Volkswagen Jetta Sportswagen.

18.     Griebel purchased the 2013 Jetta Sportswagen specifically because of the fuel mileage, the stated available power, and because it was marketed as "clean" diesel. At no time prior to the purchase of an Affected Vehicle did Defendant Volkswagen disclose that the 2013 Jetta Sportswagen actually emitted up to 40 times the permitted levels of pollution or that it failed to meet federal law or regulations. Had the Griebel known the truth, then he would not have purchased the vehicle or only purchased it at a reduced price.

19.     Plaintiff Damon Sean Toal-Rossi is a resident and citizen of Bernalillo County, New Mexico. In 2009, Toal-Rossi purchased a 2010 Volkswagen Jetta Sportswagen (TDI) from Premier Motorcars in Santa Fe. Plaintiff Toal-Rossie owned, maintained, insured, and made payments on the vehicle until he sold it November of 2014. Plaintiff Toal-Rossi's 2010 Volkswagen Jetta Sportswagen is an Affected Vehicle. Unknown to Plaintiff Toal-Rossi at the time, the 2010 Volkswagen Jetta Sportswagen was equipped with a defeat device. The defeat device permitted the vehicle to get an EPA certification, but during normal driving conditions, allowed the vehicle to emit up to 40 times the allowed level of pollutants.

20.     Plaintiff David Jaye Tsosie is a resident and citizen of McKinley County, New Mexico. In September of 2015, he purchased a 2012 Volkswagen Passat (TDI) in Albuquerque, New Mexico. Plaintiff Tsosie's 2012 Volkswagen Passat is an Affected Vehicle. Unknown to Plaintiff Tsosie at the time, the 2012 Volkswagen Passat was equipped with a defeat device. The defeat device permitted the vehicle to get an EPA certification, but during normal driving conditions, the vehicle emitted up to 40 times the allowed level of pollutants.

21.     Each and every Plaintiff and proposed Class member has suffered a loss as a result of Defendant Volkswagen's omission and/or misrepresentations associated with the

Affected Vehicles.  These losses include, but are not limited to, out-of-pocket loss, future repairs, future fuel cost, decreased performance, and diminished value of the Affected Vehicle.

22. Defendant VOLKSWAGEN GROUP OF AMERICA, INC. (hereinafter, "Volkswagen Group" or "Volkswagen") is a foreign corporation organized under the laws of the State of New Jersey and registered to do business in the State of New Mexico.  Defendant Volkswagen Group headquarters are located outside of New Mexico.  Accordingly, there is diversity of citizenship between the Plaintiffs and proposed class and Defendant Volkswagen Group.  Defendant Volkswagen Group may be served with process through its registered agent, Corporation Service Company located at 125 Lincoln Avenue Suite 223, Santa Fe, NM 87501.

23. At all times relevant to this action, Defendant Volkswagen Group marketed, manufactured, distributed, leased, sold, and warranted the Affected Vehicles under the Volkswagen and Audi brand names in New Mexico (as well as other states).  Defendant Volkswagen Group designed, manufactured and installed the defeat devices in the Affected Vehicles which it knew or should have known would be distributed, leased and sold in New Mexico.  Volkswagen Group also developed and disseminated the owner's manuals, warranty, booklets, advertisements, and other marketing and promotional materials related to the Affected Vehicles.  Accordingly, this Court has personal jurisdiction over Defendant Volkswagen arising from its specific acts in this state that have given rise to the harm that is the subject of this suit.

24. This Court has jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because the proposed Class consists of 100 or more members; the amount in controversy exceeds $5,000,000.00 exclusive of costs and interest; and diversity exists.  This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. §1367.

25.     Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events or omission giving rise to Plaintiffs' claims occurred in this District.  Further, Defendant Volkswagen is deemed to reside in any judicial district in which it is subject to personal jurisdiction.

## TOLLING OF THE STATUE OF LIMITATIONS

26.     Plaintiffs incorporate all preceding paragraphs by this reference.

27.     This is a case for tolling the applicable statute of limitations.  Neither the Plaintiffs nor the proposed Class Members could have ever known about Defendant Volkswagen's sophisticated, fraudulent scheme described above.  It was not until federal and state regulators undertook a significant investigation was Volkswagen's deception revealed.  Defendant Volkswagen's goal was to avoid detection of its fraudulent scheme by regulators, the Plaintiffs, and the proposed Class.

28.     Within the time period of any applicable statute of limitations, Plaintiffs and members of the proposed classes could not have discovered through the exercise of reasonable diligence that Volkswagen was concealing the conduct complained of herein.

29.     Because of their willful and deliberate concealment of the defect complained of, Defendant Volkswagen Group should be prevented from asserting a limitations defense to any the claims of any member of the Class as defined.

## CLASS ALLEGATIONS

30.     Plaintiffs bring this action on behalf of themselves and as a class action, pursuant to Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure on behalf of the following class:

> All persons or entities in the state of New Mexico who are current or former owners and/or lessees of an Affected Vehicle. Affected Vehicles include, without limitation, 2009 VW Jetta and Jetta Sportswagen; 2010 and 2011 VW Golf, Jetta, Sportswagen, and Audi A3; 2012-2015 VW Beetle, VW Beetle Convertible, VW Golf, VW Jetta, VW Jetta Sportswagen, VW Passat, Audi A3.

31. Excluded from the Class are any individuals who claim to have a personal injury claim resulting from the defeat device in the Affected Vehicles. Also excluded from the Class are Volkswagen and its subsidiaries and affiliates, any individual or entity making a timely election to be excluded from the Class, governmental entities, and the judge(s) assigned to the case and his/her immediate family.

32. Plaintiff may revise the Class definition based on additional information learned through discovery.

33. Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claim.

34. This action has been brought and may be properly maintained on behalf of each of the Classes proposed herein under Federal Rule of Civil Procedure 23.

35. **Numerosity**. Federal Rule of Civil Procedure 23(a)(1): The members of the Classes are so numerous and geographically dispersed that individual joinder of all Class members is impracticable. While Plaintiffs are informed and believes that there are thousands of members of the Class, the precise number of Class members is unknown to Plaintiffs, but may be ascertained from Volkswagen's books and records. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, and/or published notice.

36. **Commonality and Predominance**: Federal Rule of Civil Procedure 23(a)(2) and

23(b)(3): This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including, without limitation:

    a)    Whether Volkswagen engaged in the conduct alleged herein;

    b)    Whether Volkswagen designed, advertised, marketed, distributed, leased, sold, or otherwise placed Affected Vehicles into the stream of commerce in the United States;

    c)    Whether the Affected Vehicles contains a defect in that it does not comply with U.S. EPA requirements;

    d)    Whether the Affected Vehicles can be made to comply with EPA standards without substantially degrading the performance and/or efficiency of the Affected Vehicles or diminishing the value of the Affected Vehicles;

    e)    Whether Volkswagen knew about the "defeat device" and, if so, how long Volkswagen has known;

    f)    Whether Volkswagen designed, manufactured, marketed, and distributed Affected Vehicles with a "defeat device";

    g)    Whether Volkswagen's conduct violates consumer protection statutes, warranty laws, and other laws as asserted herein;

    h)    Whether Plaintiffs and the other Class members overpaid for their Affected Vehicles;

    i)    Whether Plaintiffs and the other Class members are entitled to equitable relief, including, but not limited to, restitution or injunctive relief; and

    j)    Whether Plaintiffs and the other Class members are entitled to damages and other monetary relief and, if so, in what amount.

    37.    **Typicality**: Federal Rule of Civil Procedure 23(a)(3): Plaintiffs' claims are typical of the other Class members' claims because, among other things, all Class members were comparably injured through Volkswagen's wrongful conduct as described above.

    38.    **Adequacy**: Federal Rule of Civil Procedure 23(a)(4): Plaintiffs are adequate Class representative because their interests do not conflict with the interests of the other members of the Classes they seek to represent; Plaintiffs have retained counsel competent and experienced in

complex class action litigation; and Plaintiffs intend to prosecute this action vigorously. The Classes' interests will be fairly and adequately protected by Plaintiffs and their counsel.

39. **Declaratory and Injunctive Relief**: Federal Rule of Civil Procedure 23(b)(2): Volkswagen has acted or refused to act on grounds generally applicable to Plaintiffs and the other members of the Classes, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Class as a whole.

40. **Superiority**: Federal Rule of Civil Procedure 23(b)(3): A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiffs and the other Class members are relatively small compared to the burden and expense that would be required of members of the Class to individually litigate their claims against Volkswagen, so it would be impracticable for the members of the Classes to individually seek redress for Volkswagen's wrongful conduct. Even if Class members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

**COUNT I**
**UNFAIR PRACTICES ACT**
**PURSUANT TO SECTION 57-12-1 NMSA 1978,** *et seq*.

41. Plaintiffs hereby incorporates all previously alleged paragraphs as though set forth fully herein.

42. Defendant Volkswagen Group violated New Mexico's Unfair Practices Act, Sections 57-12-1, *et. seq.*

43. Volkswagen knowingly or without exercising reasonable due diligence engaged in unfair or deceptive trade practices and unconscionable trade practices in connection with the sale and lease of the Affected Vehicles in violation of New Mexico law.

44. In particular, Volkswagen engaged in false or misleading oral and written statements, visual descriptions or other representations as described more fully above.

45. Volkswagen engaged in the following unlawful acts under the Unfair Trade Practices Act:

   a. Causing confusion or misunderstanding as to the source, sponsorship, approval or certification of good or services;

   b. Causing confusion or misunderstanding as to the affiliation, connection or association with or certification of another;

   c. Representing that goods have sponsorship, approval, characteristics, uses, benefits, or quantities that they do not have;

   d. Representing that goods are of a particular standard, quality or grade or that good are of a particular style or model if they are of another;

   e. Using exaggeration, innuendo, or ambiguity as to a material fact and/or failing to state a material fact which deceived or tended to deceive; AND/OR

   f. Failing to deliver the quality or quantity of goods or services contracted for.

46. Volkswagen also engaged in unconscionable trade practices by taking advantage of the Plaintiffs' and the Classes' lack of knowledge, ability, experience, or capacity to a grossly unfair degree and engaging in an act that resulted in a gross disparity between the value received by the Plaintiffs and the Class and the price paid.

47. Volkswagen also engaged in a willful misrepresentation of the condition of its motor vehicles in violation of NMSA 1978 Section 57-12-6. Because members of the Class could not have discovered the misrepresentation trough ordinary means and diligence, the limitations period should be tolled and Defendant should be stooped from asserting a limitations defense due to its deliberate concealment of the misrepresentation.

48. Plaintiffs and the Class suffered actual damages as described more fully above as a result of Volkswagen's violations of the Unfair Practices Act and, as a result, are entitled to damages.

49. Volkswagen's violations of the Unfair Practice Act were willful, entitling Plaintiffs to treble damages.

50. Volkswagen's violations of the Unfair Practice Act also entitle Plaintiffs and the Class to an award of attorneys' fees and costs.

51. Volkswagen's violations of the Unfair Practices Act also entitled Plaintiffs and the Class to injunctive relief to correct the defect, if possible, refund of the lost value, and/or refund of the purchase price pursuant to NMSA 1978, Section 57-12-10A and Federal Rules of Civil Procedure 23(b)(2) and 65.

## COUNT II
## COMMON LAW FRAUD

52. Plaintiffs hereby incorporates all previously alleged paragraphs as though set forth fully herein.

53. Defendant Volkswagen Group represented to Plaintiffs and the Class that the Affected Vehicles emission levels complied with standards set by the EPA and state and local governments.

54. Defendant Volkswagen represented to Plaintiffs and the Class that the Affected Vehicles met federal and local emissions standards with the same level of power and performance.

55. Defendant Volkswagen knew that the vehicles emissions far exceeded regulatory standards and that the same power and performance characteristics could not be achieved with the Affected Vehicles still meeting the federal and local emission laws.  Alternatively, Defendant Volkswagen recklessly made these representations.

56. Defendant Volkswagen made the above representations with the intent to deceive and induce Plaintiffs and the Class to rely on those representations.

57. Plaintiffs and the Class did in fact rely on those representations.

58. As the direct, natural, and proximate result of Volkswagen's acts and omissions, Plaintiffs have suffered and will continue to suffer damages in an amount to be determined at trial.

59. Volkswagen's actions and omissions were intentional, willful and in wanton disregard for Plaintiffs' and the Classes' rights and entitle Plaintiffs to an award of punitive damages in an amount to be determined at trial.

### COUNT III
### NEGLIGENT MISREPRESENTATION

60. Plaintiffs hereby incorporates all previously alleged paragraphs as though set forth fully herein.

61. In the alternative to Fraud, Plaintiffs plead Negligent Misrepresentation.

62. Volkswagen Group made representations to Plaintiffs and the Class which were untrue.

63. Volkswagen had no reasonable ground for believing that these statements were true.

64. As the direct, natural, and proximate result of Volkswagen's actions, Plaintiffs and the Class have suffered and continues to suffer damages in an amount to be determined at trial.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of members of the New Mexico class, respectfully request that the Court enter judgment in their favor and against Volkswagen Group, as follows:

A. Certification of the New Mexico Class, including appointment of Plaintiffs' counsel as Class Counsel for the Class;

B. An order temporarily and permanently enjoining Volkswagen from continuing the unlawful, deceptive, fraudulent, and unfair practices alleged herein;

C. Injunctive relief in the form of a recall and/or free replacement program and/or refund of the lost value, and/or refund of the purchase price;

D. Damages, including treble and punitive damages, disgorgement, and costs in an amount to be determined at trial;

E. Pre- and post- judgment interest;

F. An award of costs and attorneys' fees; and

G. Any other such relief that may be appropriate.

## DEMAND FOR JURY TRIAL

Plaintiffs and the Class hereby demand a jury trial for all claims so triable.

>Respectfully Submitted,
>
>HENDLER LYONS FLORES
>
>By:__/s/ Sean Lyons_____
>Sean Lyons
>Scott Hendler, *will seek admission pro hac vice*
>1301 West 25th Street, Suite 400
>Austin, TX 78705
>Tel:	(512) 439-3200
>Fax:	(512) 439-3201
>E-mail: slyons@henderlaw.com
>          shendler@henderlaw.com
>
>-and-
>
>THE DAVIS LAW FIRM, LLC
>
>_____
>Ben Davis
>111 Tulane Dr. SE
>Albuquerque, NM 87106
>Tel:	(505) 750-8742
>Fax:	(505) 559-4808
>E-mail: bdavis@tdlf-law.com